# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN TERRANCE COIT,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:22-cv-01567** |
| v. | : | |
| | : | **(Judge Kane)** |
| **R. MARSH, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court are Defendants' motions to dismiss Plaintiff's complaint and to stay discovery in this matter. (Doc. Nos. 26, 37.) Also before the Court are Plaintiff's motions to amend his complaint and for the appointment of counsel. (Doc. Nos. 29, 34, 41.) For the reasons set forth below, the Court will deny Plaintiff's motions, grant in part and deny in part Defendants' motion to dismiss, and deny without prejudice Defendants' motion to stay discovery in this matter.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff Kevin Terrance Coit ("Plaintiff"), an experienced litigant before this Court, is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") and is currently incarcerated at State Correctional Institution Houtzdale in Houtzdale, Pennsylvania. (Doc. No. 40 at 1.) On October 6, 2022, Plaintiff commenced the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated at State Correctional Institution Frackville ("SCI Frackville") in Frackville, Pennsylvania. (Doc. No. 1.) In his complaint, Plaintiff names the following individuals as Defendants, all of whom appear to be employed by the DOC and to have worked at the DOC's Central Office or SCI Frackville during the period of time relevant to

his claims: (1) R. Marsh, an "R.D.S.;" (2) Malishik, an "R.L.P.M.;" (3) B. Snyder, an "R.P.S.S.;" (4) Ms. Britton, the superintendent; (5) Mr. Wynder, a deputy; (6) Kephart, also a deputy; (7) Ms. O'Mara, a "CCPM;" (8) Wergynowic, a unit manager; and (9) Wentzel, a counselor (collectively, "Defendants").  (Id. at 1, 2–3.)

On December 7, 2022, the Court, inter alia, deemed the complaint filed and directed service of the complaint upon Defendants.  (Doc. No. 11.)  On December 20, 2022, counsel entered his appearance for Defendants and waived service on their behalf.  (Doc. Nos. 13, 14.)  Thereafter, on January 4 and 13, 2023, Plaintiff filed a motion to supplement his complaint (Doc. No. 15) and a motion to amend or supplement his complaint (Doc. No. 16), along with a proposed amended complaint (Doc. No. 16-1).

In response to Plaintiff's motions and proposed amended complaint, Defendants filed a motion requesting that their obligation to respond to the complaint, or the amended complaint should Plaintiff's motions be granted by the Court, be extended until the Court ruled upon Plaintiff's motions to amend or supplement his complaint.  (Doc. No. 18 at 2.)  In support of their motion for an extension of time, Defendants argued that this would promote the efficient use of judicial and public resources and would not prejudice Plaintiff in any way.  (Id.)  The Court agreed, and, on March 9, 2023, the Court granted Defendants' motion and stayed their response pending resolution of Plaintiff's motions to amend or supplement his complaint.  (Doc. No. 21.)

On June 29, 2023, the Court issued a Memorandum and Order denying Plaintiff's motions because such an amendment would have been futile—that is, his proposed amended complaint was subject to dismissal for failure to comply with the Federal Rules of Civil Procedure.  (Doc. Nos. 24, 25.)  As such, the Court ordered that this action would proceed on

Plaintiff's complaint.  (Id.)  In addition, the Court lifted the stay that was previously issued on March 9, 2023, and directed Defendants to file a response to Plaintiff's complaint on or before July 20, 2023.  (Doc. No. 25.)

In accordance with the Court's Memorandum and Order, Defendants have timely filed a motion to dismiss Plaintiff's complaint and supporting brief, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. Nos. 26, 27.)  Plaintiff has since filed a brief in opposition to Defendants' motion to dismiss (Doc. No. 28), as well as two (2) motions seeking leave to amend his complaint (Doc. Nos. 29, 34), supporting briefs (Doc. Nos. 30, 35), and a motion seeking the appointment of counsel (Doc.  No. 41).  Defendant has filed opposition briefs to Plaintiff's motions seeking leave to amend.  (Doc. Nos. 31, 36.)  Defendants have also filed a motion to stay discovery, along with a supporting brief.  (Doc. Nos. 37, 38.)  Plaintiff has not filed a brief in opposition to Defendants' motion to stay discovery, and the time period for doing so has passed.  Thus, the parties' pending motions are ripe for the Court's resolution.

### B.    Factual Background

In his complaint, Plaintiff sets forth the following allegations.  On May 16, 2022, he arrived at SCI Frackville.  (Doc. No. 1 at 4.)  Thereafter, on August 1, 2022, he was expressing suicidal thoughts to Defendant Wergynowic who stated, "let me see Coit, I don't believe you[,]" and "you are not suicidal[;] your [sic] behavioral."  (Id.)  Plaintiff "then began swallowing foreign objects and cutting himself[,]" to which "Defendant" (presumably Wergynowic) responded, "go deeper."  (Id.)  Plaintiff, however, was "never placed in POC."  (Id.)

On August 9, 2022, "due to continuous acts of self harm, Plaintiff was finally placed in POC."  (Id.)  Plaintiff appears to allege that, while he was in POC, "Wink" (a non-party) sprayed him with OC spray for refusing to withdraw a grievance against Defendants Kephart and

Wynder.  (<u>Id.</u> at 4–5.)  The following day, on August 10, 2022, Plaintiff returned from the hospital and was placed in "cuffmits and shackled."  (<u>Id.</u> at 5.)  Plaintiff appears to allege that, while he was in "cuffmits and shackled," he attempted to "scratch" and "Kimmel" (a non-party) sprayed him with OC spray.  (<u>Id.</u>)

On or about August 16, 2022, Plaintiff spoke with Defendant Marsh about "being sprayed multiple times for no reason."  (<u>Id.</u>)  Defendant Marsh stated, "if you want my help[,] withdraw Coit v. Wynder 122CV1277.  If not, things are going to get worse."  (<u>Id.</u>)  Although Plaintiff submitted a grievance, he has not received a response.  (<u>Id.</u>)  The following day, on August 17, 2022, Plaintiff's status was changed from "POC" to "recovery[,]" and he was placed in a cell that was covered in feces, had no water, "no mattress[,] no smock[,] and no blanket[,]" and he "was left in the cell completely in the nude[.]"  (<u>Id.</u>); <u>see also</u> (<u>id.</u> at 6 (stating that he "has not had no yard, showers, toilet paper, mental health treatment for over 36 days")).

On or about August 19, 2022, Defendants Wergynowic, Kephart, Wynder, Britton, Snyder, Malishik, and Marsh "all agreed to withhold all of Plaintiff [sic] legal mail[,]" and, as a result, Plaintiff "has been denied access to the law library[,] access to his lawyer[,] and access to the courts."  (<u>Id.</u>)  Plaintiff "has also been denied the opportunity to file grievances and possibly exhaust any possible remedies."  (<u>Id.</u>)

"[S]ometime in August" (presumably, August of 2022), Defendants had a meeting and made the decision "to violate Plaintiff's due process, by temporarily removing [him] from BMU status and initiating an illegal step-down."  (<u>Id.</u>)  In connection with this decision, Plaintiff alleges that a "memo" was issued "for the step-down[.]"  (<u>Id.</u> (asserting that this memo was "a complete violation and waver [sic] of several DOC policies . . . ").)  Plaintiff also alleges that this

memo denied him showers, soap, meals, water, toiler paper, and resulted in him being in a cell with blood and feces on the wall.  (Id.)

Plaintiff asserts that, on September 5, 2022, he was suffering from mental health issues, and he "began to bite holes in his arm" and "cover[ ] [his] cell in feces[.]"  (Id. at 7.)  Plaintiff also asserts that, beginning on September 10, 2022, he endured the following conditions of confinement—sometimes for a week or thirty (30) days at a time: placement in a cell that had no water, was covered in feces, and had "the light on causing [him] to lose sleep[;]" denial of toothpaste, a toothbrush, toilet paper, and showers; confinement to his cell "with no yard[;]" and provided only "finger food[,]" which "comes in a wax bag."  (Id.); see also (id. at 7–8 (alleging that, around this same period of time, "Ramer" (a non-party) took Plaintiff's clothes on several occasions leaving him naked for days at a time); id. at 8 (asserting that "Whol" (a non-party) "paraded" Plaintiff through the hallway naked)).

In connection with all of these allegations, Plaintiff sets forth the following statement of his claims: "Cruel and Unusual Punishment, Retaliation, Unconstitutional Conditions of Confinement, Denial of intimate association, 14th. Amendment due process, First Amendment denial of access to the courts."  (Id. at 2.)  As for relief, he seeks monetary damages, lawyer fees, court costs, and "any other rewards the jury deems appropriate."  (Id. at 9.)  In support of his claims and request for relief, Plaintiff has attached various documents to his complaint, including misconduct reports (id. at 11–13), a confiscated items receipt (id. at 14), and inmate request to staff member forms (id. at 15–21).

## II.     LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any

conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

III.     DISCUSSION

A.     Plaintiff's Motions to Amend His Complaint

As set forth above, Plaintiff has filed two (2) motions to amend his complaint, along with supporting briefs.  (Doc. Nos. 29, 30, 34, 35.)  With regard to Plaintiff's first motion to amend, the Court observes that Plaintiff failed to file a proposed amended complaint, as required by the Local Rules of this Court.  See M.D. Pa. L.R. 15.1(a) (providing, in pertinent part, that "[w]hen a party files a motion requesting leave to file an amended pleading, the proposed amended pleading must be retyped or reprinted so that it will be complete in itself including exhibits and shall be filed on paper as a separate document or, in the Electronic Filing System, as an attachment to the motion").

Additionally, although Plaintiff filed a proposed amended complaint (Doc. No. 34-1) with his second motion to amend, his second motion and supporting brief were filed more than twenty-one (21) days after Defendants filed their motion to dismiss his complaint and supporting brief.  Compare (Doc. Nos. 26, 27) with (Doc. Nos. 34, 35).  And, further, Plaintiff filed his second motion and supporting brief without leave of Court and without the consent of Defendants.  See Fed. R. Civ. P. 15(a)(1)–(2) (providing that a party may amend his pleadings "once as a matter of course" within (a) 21 days after service or (b) 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier, and that, in all other cases, a party may only amend his pleading as a matter of course "with the opposing party's written consent or the [C]ourt's leave").

Thus, Plaintiff's first and second motions to amend his complaint fail to comply with the Local Rules of this Court and the Federal Rules of Civil Procedure.  As a result, the Court finds that they are subject to dismissal.  However, in an abundance of caution, the Court has reviewed

the allegations of Plaintiff's proposed amended complaint.  (Doc. No. 34-1.)  Ultimately, the Court agrees with Defendants (Doc. No. 36 at 5–9) that granting Plaintiff leave to file his proposed amended complaint would be futile.

The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).  Indeed, Rule 15(a) provides that leave to amend should be freely given "when justice so requires."  See Fed. R. Civ. P. 15(a).  However, a court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]"  See id.; see also In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (stating that "amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted" (citations and internal quotation marks omitted)).

Here, the Court finds that granting Plaintiff leave to amend would be futile because his proposed amended complaint is subject to dismissal for failure to comply with the requirements of Rule 8.  See Fed. R. Civ. P. 8.  Rule 8(a) requires a pleading to contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  See Fed. R. Civ. P. 8(a)(2).  In addition, Rule 8(d)(1) requires that "[e]ach allegation . . . be simple, concise, and direct."  See Fed. R. Civ. P. 8(d)(1).  Generally speaking, these Rules require a plaintiff to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests."  See Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This pleading standard requires more than legal labels and conclusory assertions: a complaint must

include enough facts "to raise a right to relief above the speculative level[.]"  <u>See</u> <u>Twombly</u>, 550 U.S. at 555 (citations omitted).

The Court finds that Plaintiff's proposed amended complaint violates Rule 8 in the same way that his prior proposed amended complaint violated Rule 8.  <u>See</u> (Doc. Nos. 24, 25 (containing the Court's June 29, 2023 Memorandum and Order addressing Plaintiff's previous motions to amend or supplement his complaint)).  His instant proposed pleading, which is comprised of thirty-one (31) pages (as opposed to his twenty-two (22) page-complaint), is much lengthier and now names seventeen (17) employees of the DOC as defendants (as opposed to the nine (9) employees named in his complaint).  (Doc. No. 34-1 at 3–6.)  In addition, the factual narrative underpinning his various Section 1983 claims cover a period of six (6) months and contain numerous accusations and events that allegedly occurred during this period.  (<u>Id.</u> at 8.) While Plaintiff's numbered paragraphs are individually concise, they offer little more than a disconnected summary of those numerous accusations and events.  <u>See</u> (<u>id.</u> at 8–26).  All of this has made it difficult for both the Court and Defendants (Doc. No. 36 at 7) to sift through Plaintiff's proposed pleading in an attempt to ascertain the specific grounds upon which his various Section 1983 claims rest.  <u>See</u> (<u>id.</u> at 20–27).

Accordingly, for all of these reasons, the Court concludes that Plaintiff's motions to amend his complaint fail to comply with the Local Rules of this Court and the Federal Rules of Civil Procedure.  Therefore, the Court will deny his motions to amend.  (Doc. Nos. 29, 34.)  The Court turns to Defendants' motion to dismiss Plaintiff's complaint.  (Doc. No. 26.)

**B.      Defendants' Motion to Dismiss Plaintiff's Complaint**

      **1.      Exhaustion of Administrative Remedies**

Initially, Defendants argue that the Court should dismiss Plaintiff's complaint with prejudice due to his alleged admission that he failed to exhaust available administrative remedies prior to filing this suit in violation of the Prison Litigation Reform Act ("PLRA").  (Doc. No. 27 at 4–5.)  The PLRA's exhaustion requirement mandates that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  See 42 U.S.C. § 1997e(a) (emphasis added).  In other words, exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding his prison conditions.  See Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); Booth v. Churner, 532 U.S. 731, 733–34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'"  Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (quoting Woodford, 548 U.S. at 88).  And the applicable "procedural rules are supplied by the individual prisons."  See id. (citations omitted); Spruill v.

11

Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ."); see also Jones, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim . . . "); Woodford, 548 U.S. at 90 (stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ").

A prisoner's failure to follow these procedural rules will result in a procedural default of his claims.  See id. at 230–32 (concluding that the PLRA's exhaustion requirement includes a procedural default component); Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010) (recognizing this holding in Spruill).  A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him.  See Rinaldi v. United States, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting Woodford, 548 U.S. at 93)).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  Downey, 968 F.3d at 305 (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).

The failure to exhaust available administrative remedies is an affirmative defense.  See Jones, 549 U.S. at 216.  Accordingly, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."  See Rinaldi, 904 F.3d at 268 (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)).  However, "once the defendant has established that the inmate

failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See id. (citation omitted).

Finally, requiring a prisoner to exhaust available administrative remedies before filing suit in federal court advances the policy justifications of the PLRA—to "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." See Downey, 968 F.3d at 305 (citation and internal quotation marks omitted) (alterations added); Jones, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

Here, Defendants argue that it is clear from the face of Plaintiff's complaint that he failed to exhaust administrative remedies before asserting his Section 1983 claims in this Court. (Doc. No. 27 at 4–5.) In support, they cite to Section II of Plaintiff's complaint, which is titled "EXHAUSTION OF ADMINISTRATIVE REMEDIES." (Doc. No. 1 at 2.) In Section II, Plaintiff marks "[n]o" that he has not fully exhausted administrative remedies, but, he proceeds to explain the basis for his failure as follows: "Plaintiff has been denied [g]rievances." (Id.) Although Defendants contend that Plaintiff's explanation is too vague to overcome his failure to comply with the PLRA (Doc. No. 27 at 5), the Court disagrees.

As discussed above, the failure to exhaust available administrative remedies is an affirmative defense. See Jones, 549 U.S. at 216. Thus, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests" on Defendants, not Plaintiff. See Rinaldi, 904 F.3d at 268 (citing Ray, 285 F.3d at 295). In other words, Plaintiff is "not required to specially plead or

demonstrate exhaustion" in his complaint.  See Jones, 549 U.S. at 216; Small v. Camden County, 728 F.3d 265, 268 (3d Cir. 2013) (explaining that the "[f]ailure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff" (citations omitted)).

Thus, while Plaintiff's complaint (and Plaintiff's proposed amended complaint, as argued by Defendants) set forth "inconsistent[ ]" allegations that he was both denied grievances and engaged in the grievance process (Doc. No. 27 at 5), such inconsistencies do not clearly establish, one way or the other, whether Plaintiff exhausted available administrative remedies. Indeed, it is not implausible that Plaintiff could have been denied grievances in an effort to exhaust some of his Section 1983 claims while, at the same time, he was able to file grievances to exhaust other Section 1983 claims.  Moreover, while Plaintiff has attached various documentation to his complaint, including some inmate request forms, this case is at the pleading stage and not the summary judgment stage, and, thus, the Court does not have the benefit of a fully developed record to consider this exhaustion issue.

Accordingly, for all of these reasons, the Court cannot conclude, based upon the face of Plaintiff's complaint, that he failed to exhaust available administrative remedies before asserting his Section 1983 claims against Defendants.  As a result, the Court will deny Defendants' motion to dismiss Plaintiff's complaint on his alleged failure to exhaust.

### 2.    Plaintiff's Eighth Amendment Claims

Next, Defendants argue that the Court should dismiss Plaintiff's Eighth Amendment claims for failure to state a claim upon which relief can be granted.  (Doc. No. 27 at 5–9.)  "The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  Glossip v. Gross, 576 U.S. 863, 876 (2015).

As explained by the United States Supreme Court, the Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation." See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted).

Thus, in order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test[.]" See Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Under the first prong, courts consider whether the deprivation was "'objectively, sufficiently serious[,]" that is, whether "a prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[.]'" See id. (quoting Farmer, 511 U.S. at 834).  Under the second prong, courts must consider whether the prison official was "'deliberate[ly] indifferen[t] to inmate health or safety.'" See id. (quoting Farmer, 511 U.S. at 834).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care, and reasonable safety.  See Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000) (stating that "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety" (citing DeShaney v. Winnebago Co. Dep't of Social Svcs., 489 U.S. 189, 199–200 (1989))); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (explaining that the Eighth Amendment imposes a duty upon prison officials "to ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to ensure that prison officials] take reasonable measures to guarantee the safety of the inmates" (citations and internal quotation marks omitted)).

15

Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  See Farmer, 511 U.S. at 837.  "The knowledge element of deliberate indifference is subjective, . . . meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."  Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837–38)).

Here, and as an initial matter, the Court agrees with Defendants (Doc. No. 27 at 7) that some of Plaintiff's allegations describing alleged violations of the Cruel and Unusual Punishment Clause are not connected to any of the Defendants.  For instance, some of Plaintiff's allegations are asserted against individuals who are not named as Defendants and, thus, are not parties to this action.  (Doc. No. 1 at 4–5, 7–8.)  In addition, some of Plaintiff's other allegations are not connected to any individual at all.  See, e.g., (id. at 5 (alleging that he was held in a "cuff-bag" for six (6) days)); see also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that, in order for Plaintiff to state a claim under Section 1983, he must allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).

That said, however, Plaintiff's complaint has asserted two (2) instances in which Defendants are alleged to have violated the Cruel and Unusual Punishment Clause.  As for the first instance, Plaintiff alleges that, on August 1, 2022, he was expressing suicidal thoughts to

16

Defendant Wergynowic who stated to him, "let me see Coit, I don't believe you[,]" and "you are not suicidal[;] your [sic] behavioral[.]"  (Doc. No. 1 at 4.)  As a result of Defendant Wergynowic's alleged statements, Plaintiff "began swallowing foreign objects and cutting himself[,]" to which Defendant Wergynowic responded, "go deeper."  (Id.)  However, in their motion to dismiss and supporting brief, Defendants do not address these specific factual allegations against Defendant Wergynowic.  See (Doc. Nos. 26; 27 at 5–9.)  Thus, to the extent that Defendants seek dismissal of Plaintiff's Eighth Amendment claim against Defendant Wergynowic, their motion will be denied.  See Palakovic v. Wetzel, 854 F.3d 209, 222 (3d Cir. 2017) (explaining that "the vulnerability to suicide framework is simply a more specific application of the general rule set forth in Estelle v. Gamble, 429 U.S. 97, 104[ ] (1976), which requires that prison officials not be deliberately indifferent to the serious medical needs of prisoners[,]" and that, "[i]n essence, a particular vulnerability to suicide is just one type of serious medical need" (citation and internal quotation marks omitted)).

As for the second incident, Plaintiff alleges that in August 2022, all Defendants had a meeting and made the decision to temporarily remove him from BMU status and initiate a step-down.  (Doc. No. 1 at 6.)  In connection with this decision, Plaintiff alleges that a "memo" was issued, denying him showers, soap, meals, water, toiler paper, and placing him in a cell that had blood and feces on the wall.  (Id.)  Plaintiff further alleges that he was subsequently placed in a cell wherein he endured the following conditions of confinement—sometimes for a week or thirty (30) days at a time: placement in a cell that had no water, was covered in feces, and had "the light on causing Plaintiff to lose sleep[;]" denial of toothpaste, a toothbrush, toilet paper, and showers; confinement to a cell "with no yard[;]" and provided only "finger food[,]" which "comes in a wax bag."  (Id.)

17

While Defendants argue that these allegations do not show that Plaintiff was deprived of basic human necessities (such as food, clothing, shelter, or medical care) and, instead, show that certain measures had to be taken because of, or were created by, Plaintiff engaging in self-harm (Doc. No. 27 at 8–9), the Court is unpersuaded.  Accepting Plaintiff's allegations as true and construing them in the light most favorable to him, his complaint asserts that Defendants were deliberately indifferent (i.e., issuing the "memo" to deny him showers, soap, meals, water, toilet paper, etc.) to his basic human needs (i.e., holding him in a cell, for thirty (30) days at a time, that was unsanitary, had no water, and had lighting that interfered with his sleep, and denying him exercise, showers, toilet paper, a toothbrush, and toothpaste).  See Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 373–74 (3d Cir. 2019) (providing that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise[,]" and concluding that the plaintiff had stated "such mutually enforcing conditions" by alleging that he was deprived of clothing, bedding, and exposed to constant lighting and cold temperatures for days (footnote, citation, and internal quotation marks omitted)).

Accordingly, for all of these reasons, the Court will grant in part and deny in part Defendants' motion to dismiss Plaintiff's Eighth Amendment claims.  The Court turns to Plaintiff's First Amendment claims.

### 3.    Plaintiff's First Amendment Claims

Next, Defendants argue that the Court should dismiss Plaintiff's First Amendment claims for failure to state a claim upon which relief can be granted.  (Doc. No. 27 at 9–13.)  As set forth above, Plaintiff asserts First Amendment claims for denial of access to the courts, retaliation, and

18

denial of the right to intimate association.  (Doc. No. 1 at 2.)  For the sake of clarity, the Court addresses each of Plaintiff's First Amendment claims separately below.

### a.      Access to Courts

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts."  See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)); see also Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294 n.17 (3d Cir. 2018) (explaining that, typically, in the prisoner context, the right is "framed as a due process right" (citations omitted)).

Generally speaking, access-to-courts claims fall into two (2) categories: forward-looking claims and backward-looking claims.  See Christopher v. Harbury, 536 U.S. 403, 413–14 (2002). Forward-looking claims seek relief from "systemic official action" that "frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time."  See id. at 413.  Thus, in these cases, the underlying cause of action "has not been lost for all time, . . . but only in the short term[,]" and the ultimate object of these sorts of access claims is to place the plaintiff in a position to pursue the underlying cause of action "once the frustrating condition has been removed."  See id.

Backward-looking claims seek relief for suits "that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future."  See id. at 413–14 (footnote omitted).  As a result, "[t]hese cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable."  See id. at 414 (footnote and internal footnote omitted).  The ultimate object of these sorts of access claims is not a judgment in a separate suit, "but simply the judgment in the access claim itself[.]"  See id.

In both types of access claims, the justification is the same: "to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." See id. at 414–15.  The Supreme Court's "cases rest on the recognition that the right is ancillary to the underlying [cause of action], without which a plaintiff cannot have suffered injury by being shut out of court." See id. at 415.  Thus, in pursuing an access-to-courts claim, a plaintiff must point to an actual injury by "identify[ing] a nonfrivolous, arguable underlying [cause of action]" that is lost or that is being obstructed by the asserted denial of access to the courts.  See id. (internal citation and quotation marks omitted).  A plaintiff must also point to "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought."  See id.

Additionally, in the prison context, "the injury requirement is not satisfied by just any type of frustrated legal claim."  See Lewis, 518 U.S. at 354.  Instead, only claims that involve "direct or collateral attacks on a prisoner's conviction or sentence, or civil rights suits challenging the conditions of his confinement—could support an access-to-courts injury."  See Rivera v. Monko, 37 F.4th 909, 921 (3d Cir. 2022) (citing Lewis, 518 U.S. at 355).  As explained by the Supreme Court, "[i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  See Lewis, 518 U.S. at 355 (emphasis in original).

Here, the Court finds that Plaintiff's complaint does not sufficiently allege: any underlying cause of action, whether anticipated or lost; any articulated injury suffered by Plaintiff as a result of Defendants Wergynowic, Kephart, Wynder, Britton, Snyder, Malishik, and Marsh's conduct; or any remedy that could be awarded as recompense but not otherwise available in some suit that may yet be brought.  See Christopher, 536 U.S. at 416 (explaining

20

that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant" (citation omitted)); <u>Monroe</u>, 536 F.3d at 205–06 (explaining that when a prisoner asserts an access-to-courts claim, his "complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy'" in such a way that defendants are on fair notice of it (quoting <u>Christopher</u>, 536 U.S. at 416–17)).

Accordingly, because Plaintiff's complaint fails to make such a showing, the Court agrees with Defendants Wergynowic, Kephart, Wynder, Britton, Snyder, Malishik, and Marsh that Plaintiff has not stated an access-to-courts claim upon which relief can be granted against them. As such, the Court will grant Defendants' motion on this basis and dismiss Plaintiff's access-to-courts claim.

### b.    Retaliation

In order to state a First Amendment retaliation claim, a plaintiff must allege that: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." <u>See</u> <u>Watson v. Rozum</u>, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted). However, even if a plaintiff states a prima facie case of retaliation, "prison officials may still prevail if they establish that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>See</u> <u>id.</u> (citation and internal quotation marks omitted).

As for the first element of a plaintiff's prima facie case, the filing of lawsuits and prison grievances constitute activity protected by the First Amendment. <u>See</u> <u>Watson</u>, 834 F.3d at 422 (reiterating its prior holding that a prisoner-plaintiff engages in constitutionally protected activity

when he files a grievance against a prison official (citing <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003))); <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002) (acknowledging its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); <u>Allah v. Seiverling</u>, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

With regard to the second element of a plaintiff's prima facie case, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights[.]"  <u>See</u> <u>Mitchell</u>, 318 F.3d at 530 (alterations in original) (citations and internal quotation marks omitted); <u>Fantone v. Latini</u>, 780 F.3d 184, 191 (3d Cir. 2015), <u>as amended</u> (Mar. 24, 2015), (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights . . . " (citation omitted)).  However, to be actionable under Section 1983, the alleged adverse action must be more than <u>de minimis</u>.  <u>See</u> <u>McKee v. Hart</u>, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than <u>de minimis</u>" (citations and internal quotation marks omitted)).

And, finally, with respect to the third element of a plaintiff's prima facie case, the Court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive."  <u>See</u> <u>Watson</u>, 834 F.3d at 422.  The plaintiff "can satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly

retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."
See id. (footnote omitted).

Here, the Court finds that, with respect to Defendants Wergynowic, Kephart, Wynder, Britton, Snyder, and Malishik, Plaintiff's complaint fails to allege all three (3) elements of a prima facie retaliation claim.  As a result, Defendants' motion will be granted with respect to these Defendants for failure to state a First Amendment retaliation claim upon which relief can be granted.  However, with respect to Defendant Marsh, the Court finds that Plaintiff's complaint sufficiently alleges all three (3) elements of a prima facie retaliation claim.

Plaintiff's complaint asserts that, on or about August 16, 2022, he spoke with Defendant Marsh about being sprayed with OC spray (by non-parties) and that Defendant Marsh stated, "if you want my help[,] withdraw Coit v. Wynder 122CV1277.  If not, things are going to get worse."  (Doc. No. 1 at 5.)  Plaintiff further asserts that, the following day, his status was changed from POC to recovery, and he was placed in a cell that was covered in feces and had no water, "no mattress[,] no smock[,] and no blanket[,]" and he "was left in the cell completely in the nude[.]"  (Id.); see also (id. at 6 (stating that he "had no yard, showers, toilet paper, mental health treatment for over 36 days)).

Based upon these assertions, the Court finds that Plaintiff's complaint establishes: that he engaged in constitutionally protected conduct when he filed Coit v. Wynder, No. 1:22-cv-01277 (M.D. Pa. filed July 28, 2022);[1] that there was retaliatory motive on the part of Defendant Marsh

---

[1]  Per the prisoner mailbox rule, Plaintiff's complaint in Coit v. Wynder is deemed filed as of July 28, 2022.  See Pabon v. Mahanoy, 654 F.3d 385, 391 n.8 (3d Cir. 2011) (providing that, under "[t]he federal 'prisoner mailbox rule[,]' . . . a document is deemed filed on the date it is given to prison officials for mailing" (citing Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998))).  However, the Court notes that it did not receive Plaintiff's complaint until August 16, 2022.

because, less than one month later, he instructed Plaintiff to withdraw that lawsuit or things would get worse; and that, one day after Defendant Marsh gave that instruction, adverse actions were taken against Plaintiff in the form of placement in an unsanitary cell, which had no mattress, blanket, or water, and denial of, inter alia, showers, clothes, and mental health treatment. While the Court recognizes that Defendant Marsh was not named as a defendant in Coit v. Wynder, the Court also recognizes that the named defendants in that action are Defendant Marsh's fellow coworkers at SCI Frackville, many of whom are named, here, in Plaintiff's instant complaint. Accordingly, to the extent that Defendants seek dismissal of Plaintiff's First Amendment retaliation claim against Defendant Marsh, their motion will be denied.[2]

### c.      Intimate Association

"There are two [association] freedoms protected by the First Amendment: intimate association and expressive association." Nat'l Ass'n for the Advancement of Multijurisdiction Prac. v. Castille, 799 F.3d 216, 223 (3d Cir. 2015) (citations and internal quotation marks omitted). Intimate association, as relevant here, protects "certain close and intimate human relationships like family relationships[.]" See Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 438 (3d Cir. 2000), as amended (Nov. 29, 2000). Thus, "the right of intimate association involves an individual's right to enter into and maintain intimate or private relationships free of state intrusion." See id. at 441.

In Overton v. Bazzetta, 539 U.S. 126 (2003), the Supreme Court addressed the right to intimate association in the prison context. In that case, a class of state prisoners and their friends

---

[2] While Plaintiff alleges that Wink sprayed him with OC spray for refusing to withdraw a grievance against Defendants Kephart and Wynder (Doc. No. 1 at 4–5), Plaintiff has not named Wink as a Defendant in his complaint. As such, this claim will not be considered by the Court at this time.

and family members brought a Section 1983 action against the Michigan Department of Corrections claiming that its newly promulgated regulations, which sought to restrict prison visitations in light of security problems caused by an increasing number of visitors to Michigan's prisons, violated their rights under the First, Eighth, and Fourteenth Amendments.  See id. at 128–30.  With respect to their First Amendment claim, the Supreme Court explained that "the Constitution protects certain kinds of highly personal relationships [and that] outside the prison context, there is some discussion in [its] cases of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents."  See id. at 131 (citations and internal citation and quotation marks omitted).  The Supreme Court also explained, however, that Overton was not an appropriate case for further discussion of such right because:

> [t]he very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.

See id. (internal citations omitted).

Although these concepts do not imply "that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners[,]" the Supreme Court explained in Overton that it need not "explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations [had] a rational relation to legitimate penological interests."  See id. at 131–32.  And, ultimately, the Supreme Court ruled that this, in itself, was sufficient "to sustain the regulation in question."  See id. at 132 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Here, however, Plaintiff's complaint sets forth no factual allegations to support a claim that his right to intimate association has been violated.  Moreover, Plaintiff has not pointed to a single regulation that is, allegedly, infringing on this right.  In light of his failures to do so, the Court notes Overton's reasoning that some curtailment of freedoms in the prison context must be expected and that deference must be afforded "to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  See id.

Accordingly, the Court agrees with Defendants Wergynowic, Kephart, Wynder, Britton, Snyder, Malishik, and Marsh that Plaintiff's complaint has failed to state a First Amendment intimate association claim upon which relief can be granted.  As such, the Court will grant Defendants' motion on this basis and dismiss Plaintiff's First Amendment intimate association claim.

### 4.       Plaintiff's Fourteenth Amendment Claim

Finally, Defendants argue that the Court should dismiss Plaintiff's Fourteenth Amendment due process claim for failure to state a claim upon which relief can be granted. (Doc. No. 27 at 13–16.)  The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"  See U.S. Const. amend. XIV, § 1.  "The core concept of due process is protection against arbitrary government action" and, as that core concept has developed over time, "it has come to have both substantive and procedural components."  See Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 658 (3d Cir. 2011) (citation and internal citation omitted).  The substantive component "limits what government may do regardless of the fairness of procedures that it employs[.]"  See Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000).  And the procedural component "governs

the manner in which the government may infringe upon an individual's life, liberty, or property."

See Evans, 645 F.3d at 662.

Here, Plaintiff's complaint alleges that, in August of 2022, Defendants held a meeting and made the decision "to violate [his] due process, by temporarily removing [him] from BMU status and initiating an illegal step-down." (Doc. No. 1 at 6.)  In connection with this decision, Plaintiff alleges that a "memo" was issued "for the step-down[.]"  (Id. (asserting that this memo was "a complete violation and waver [sic] of several DOC policies . . . ").)  Plaintiff also alleges that this memo denied him showers, soap, meals, water, toiler paper, and resulted in his placement in a cell that had blood and feces on the wall.  (Id.)  Thus, when liberally construed, Plaintiff's complaint appears to assert a Fourteenth Amendment procedural due process claim based upon an alleged deprivation of a "liberty" interest under the Fourteenth Amendment. (Doc. No. 1 at 6.)

As noted above, the procedural component of the Due Process Clause "governs the manner in which the government may infringe upon an individual's life, liberty, or property." See Evans, 645 F.3d at 662.   The Court recognizes that prisoners, such as Plaintiff, "are not completely deprived of the protections of the Due Process Clause simply because they are prisoners."  See id.  Thus, "[p]rocedural protections must be afforded to them before they are stripped of the rights they still retain while incarcerated."  See id. at 662–63 (citation omitted).

The Third Circuit has explained that:

> a prisoner holds a liberty interest triggering due process protection in two instances: when "state statutes and regulations create a liberty interest in freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and when "severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010) (internal quotation marks and citation omitted).

See id. at 663.  The Third Circuit has characterized the first instance as a "'so-called state-created liberty interest'" and the second instance as a "'so-called independent due process liberty interest.'"  See id. (quoting Renchenski 622 F.3d at 325).

Here, the Court finds that Plaintiff's complaint sufficiently alleges that he was deprived of an independent due process liberty interest. With respect to such interests, the Supreme Court has held that, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  See Montanye v. Haymes, 427 U.S. 236, 242 (1976).  Thus, an independent due process liberty interest arises only "when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing."  See Renchenski, 622 F.3d at 325.  Some examples of such severe changes in conditions of confinement include: "forced administration of antipsychotic medication, Washington v. Harper, 494 U.S. 210, [221–22] (1990), or involuntary transfer to a mental hospital, Vitek v. Jones, 445 U.S. 480, 492[ ] (1980), or, for a prisoner not convicted of a sex offense, forced participation in sex-offender therapy, Renchenski, 622 F.3d at 326."  See Evans, 645 F.3d at 665.

As set forth above, Defendants' August 2022 meeting and Plaintiff's removal from BMU status and subsequent "step-down" resulted in a severe change to his confinement in September 2022—that is, he was placed in a cell wherein he endured the following conditions, sometimes for a week or thirty (30) days at a time: the cell had no water, was covered in feces, and had "the light on causing [him] to lose sleep[;]" he was denied toothpaste, a toothbrush, toilet paper, and

showers; he was confined to the cell "with no yard[;]" and he was forced to eat only "finger food[,]" which "comes in a wax bag."  (Doc. No. 1 at 7.)

Thus, the Court concludes that Plaintiff's complaint alleges that he was subject to conditions of confinement that are "otherwise violative of the Constitution[.]"  See Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002) (stating that "[n]o liberty interest traced from the Due Process Clause is implicated if the conditions or degree of confinement to which a prisoner is subjected [are] within the sentence imposed upon him and do not otherwise violate the Constitution" (citation and internal quotation marks omitted)); Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (providing that, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight" (citations and internal quotation marks omitted)).

Although Defendants argue (Doc. No. 27 at 15–16) (and the Court generally agrees) that a prisoner has no constitutional right to, or liberty interest in, any particular security classification, the Court finds that Plaintiff's complaint alleges more than just a mere challenge to a security classification.  Indeed, Plaintiff's complaint alleges that, as a result of the change to his BMU status and the "step-down," he endured conditions violative of the Eighth Amendment's prohibition on cruel and unusual punishments.  Thus, while general security classifications and changes to such classifications are precisely the type of experiences that a prisoner (like Plaintiff) should reasonably except to anticipate at some point during his incarceration, the same simply cannot be said for the other conditions of confinement that were attendant to Defendants' "memo" and change in Plaintiff's security classification.

29

Accordingly, for all of these reasons, the Court concludes that Plaintiff's complaint plausibly alleges that he was deprived of an independent due process liberty interest under the Fourteenth Amendment.  Because Defendants have not squarely addressed Plaintiff's allegations concerning the other conditions of his confinement, as discussed above, the Court will allow Plaintiff to proceed on his Fourteenth Amendment due process claim at this time.

### 5.    Summary of Conclusions

As a result, the Court will grant in part and deny in part Defendants' motion to dismiss Plaintiff's complaint.  (Doc. No. 26.)  The Court will grant Defendants' motion with respect to Plaintiff's: Eighth Amendment claims to the extent that his complaint fails to allege Defendants' personal involvement; and First Amendment claims for denial of access to the courts and intimate association.  The Court will deny Defendants' motion with respect to Plaintiff's: alleged failure to exhaust available administrative remedies; Eighth Amendment claim against Defendant Wergynowic concerning the August 1, 2022 incident; Eighth Amendment claim against all Defendants concerning the August 2022 "memo" and September 2022 conditions of confinement; Plaintiff's First Amendment retaliation claim against Defendant Marsh; and Plaintiff's Fourteenth Amendment due process claim against all Defendants concerning the August 2022 "memo" and September 2022 conditions of confinement.

### C.    Leave to Amend

The next issue is whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a

proper decision on the merits." See Foman, 371 U.S. at 182 (citation and internal quotation marks omitted). However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id.

In accordance with this standard, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above. Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the complaint or any other document already filed. The amended complaint shall set forth the claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

The Court recognizes that Plaintiff has attempted, on several occasions, to amend his pleading in this case. However, now that the Court has ruled on Defendants' motion to dismiss and has set forth the standards governing Plaintiff's various Section 1983 claims in this Memorandum, the Court's hope is that this discussion will help Plaintiff frame his claims, should he elect to file an amended complaint. If Plaintiff would, instead, like to proceed on his complaint as it currently stands with his surviving claims, the Court will permit him to do so by filing a letter stating the same. Thus, until Plaintiff has either filed an amended complaint or such letter, the Court will deny Defendants' motion to stay discovery. The Court's denial is without prejudice to Defendants reasserting this request, should Plaintiff elect to file an amended complaint.

### D.        Plaintiff's Motion for the Appointment of Counsel

Finally, the Court addresses Plaintiff's motion seeking the appointment of counsel.  (Doc. No. 41.)  In support of his motion, Plaintiff alleges that: he cannot afford counsel; the issues in this case are complex and will require expert testimony; he is a prisoner with a limited education and limited access to the law library and legal resources; and he suffers from mental health issues.  (Doc. Nos. 41, 42.)  In connection with all of these allegations, Plaintiff argues that his motion should be granted and that he should be appointed counsel.  (Id.)

The Court begins its discussion with the basic principle that, although indigent civil litigants have no constitutional or statutory right to the appointment of counsel, district courts have broad discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1).  See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citations omitted).  The Third Circuit has "outlined a two-step process" that district courts are to follow when deciding whether to request appointed counsel to represent an indigent civil litigant.  See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).

First, as a threshold inquiry, the district court must consider whether the plaintiff's case has some arguable merit in fact and law.  See Montgomery, 294 F.3d at 498–99 (citations omitted).  Second, if the district court determines that the plaintiff's case has some arguable merit in fact and law, then the district court is to consider other factors, including: (1) the plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  See Houser, 927 F.3d at 697 (citations omitted).

This list, however, "is not meant to be exhaustive."  See Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993); see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress[,]" and that "[t]hey are not exhaustive, nor are they each always essential").  Rather, the district court must determine on a case-by-case basis whether a request for appointed counsel is warranted.  See Tabron, 6 F.3d at 157–58.

Having reviewed Plaintiff's motion seeking the appointment of counsel, the Court concludes that counsel is not warranted at this time.  Under the two (2)-step process outlined above, the Court must consider whether Plaintiff's case has some arguable merit in fact and law and, if so, whether the pertinent factors warrant the appointment of counsel.  See Houser, 927 F.3d at 697.  Assuming arguendo that Plaintiff's claims have such merit, the Court would still deny his motion seeking the appointment of counsel at this time.  While the Court appreciates Plaintiff's assertions that he is currently incarcerated and that he suffers from mental health issues (Doc. No. 41, 42), the Court finds that he has, nevertheless, demonstrated the ability to read, write, and understand English, as well as the apparent ability to litigate this action pro se, as illustrated by the filing of his complaint, his certified motion for leave to proceed in forma pauperis, his brief in opposition to Defendants' motion to dismiss, his motions to amend his complaint, and his instant motion seeking the appointment of counsel.  (Doc. Nos. 1, 2, 28, 29, 34, 41.)  Accordingly, given the Court's duty to liberally construe Plaintiff's pro se pleadings, see Riley v. Jeffes, 777 F.2d 143, 147–48 (3d Cir. 1985), coupled with his apparent ability to litigate this action, the Court concludes that the appointment of counsel is not warranted at this time.

Additionally, with respect to Plaintiff's concerns regarding the difficulties he will face in

this litigation due to his incarceration, the Court notes that, if he were to need extensions of time to respond to filings and Orders in this matter, which would require a response from him, then he need only request an extension from the Court at the appropriate time.  And, finally, in the event that future proceedings would otherwise demonstrate the need for counsel, then the Court may reconsider this matter either sua sponte or upon a motion properly filed by Plaintiff.

## IV.    CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will deny Plaintiff's motions to amend his complaint (Doc. Nos. 29, 34) and for the appointment of counsel (Doc. No. 41).  In addition, the Court will grant in part and deny in part Defendants' motion to dismiss Plaintiff's complaint (Doc. No. 26) and will deny Defendants' motion to stay discovery (Doc. No. 37).  An appropriate Order follows.

s/ Yvette Kane_____
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania